PETERS, J.,
dissenting.
hi respectfully disagree with the majority both in its determination that any future federally-mandated withdrawal of principal or interest is subject to Jerry Lambert’s usufruct and in its conclusion that the issue of voluntary lump-sum withdrawals from the retirement plan is not now before us. I would hold that the usufruct mandated by La.R.S. 9:1426 applies only to recurring payments being made at the time Kathryn Lambert died, not to future federally-mandated increased or additional withdrawals of principal or interest nor to voluntary lump-sum withdrawals by Mr. Lambert.
The salient facts in this case were set forth in this court’s prior unpublished opinion, Succession of Kathryn Andrews Lambert, 07-630, pp. 1-2 (La.App. 3 Cir. 11/7/07):
Jerry and Kathryn Lambert were married and had two children, Julie and Michael. During the marriage, Jerry worked at Texaco and accumulated a substantial retirement pension. There is no dispute that the pension was a community asset. In June of 1989, Jerry and Kathryn elected to receive a lump sum payment of $320,851.76 from the pension in lieu of an annuity. This money was rolled over into an IRA with Main Stay mutual funds. The record is devoid of any evidence as to the pay status of the IRA at that time. In 1992, *420 Kathryn executed a last will and testament, leaving all her property to Julie and Michael, subject to a usufruct in favor of Jerry until his death or remarriage. Kathryn died in May of 1994. At the time of Kathryn’s death, the IRA had a value of $560,229.11.
After her death, but prior to the opening of Kathryn’s succession, Jerry rolled the Main Stay funds over to yet another IRA, run by Edward D. Jones. When the succession of Kathryn Lambert was opened in April of 1995, the detailed descriptive list included the account as community property. A subsequent judgment of possession recognized Julie and |2Michael as naked owners of Kathryn’s one-half interest in the account, subject to the usufruct defined by Kathryn’s will.
Jerry remarried in 1997, prompting Julie and Michael to demand their mother’s one-half interest in the account. Jerry responded by seeking to re-open the succession and have the IRA removed from the list of community assets. After much legal wrangling, the trial court ultimately decided that the IRA was derived from community funds and was, therefore, a community asset to be included in the succession. However, he found that La.R.S. 9:1426 applied, creating a legal usufruct in favor of Jerry to run until his death, despite the terms of Kathryn’s will. From this decision, all parties appeal.
In the prior decision, this court affirmed the trial court’s decision in part, but held that there was insufficient evidence in the record to determine whether recurring payments were being received from the Main Stay IRA during Mrs. Lambert’s life and remanded the case, instructing the trial court to supplement the record on that narrow issue. In doing so, this court noted that “the legal usufruct created by La.R.S. 9:1426 would unquestionably exist if a recurring payment was being made from the Main Stay IRA at the time of Kathryn’s [Mrs. Lambert’s] death.” Id. at p. 4 (emphasis added).
On remand, the trial court factually concluded that at the time of Mrs. Lambert’s death, the Main Stay IRA was making distributions of $8,497.06 per month and, thus, was “in pay status.” Based on this conclusion, it entered a judgment that “the legal usufruct of La.R. S. 9:1426 attaches to all funds and proceeds from that account [the Main Stay IRA].” The trial court’s factual finding that the IRA was “in pay status” at Mrs. Lambert’s death is not the issue before us. Instead, we are called upon to determine the extent, if any, that Mr. Lambert’s usufruct applies to future additional or increased distributions that are mandated by federal rules, as well as any attempt by Mr. Lambert to receive lump-sum payments of either the principal or accumulated interest. The trial court’s judgment applies the usufruct to both. The majority agrees with the trial court on the first issue, but declines to address the ^second.
The majority finds that any future distributions caused by federally-mandated withdrawal rules would be subject to the usufruct established by La.R.S. 9:1426. In reaching this conclusion, the majority relies solely on the discussion of La.R.S. 9:1426 in Spaht and Moreno, 16 La.Civ.L.Treatise, Matrimonial Regimes § 3.44 (3 ed.).
I do not find that this authority stands for the proposition espoused by the majority. At best, it recognizes that the specific language of the statute does not address all the situations involving pension plans that may arise at the death of a spouse. While acknowledging that the basic policy behind La.R.S. 9:1426 is “protecting the rights of the living spouse to a retirement *421 benefit at the expense of the heirs of the deceased spouse,” the authors attempt to expand its application based on suggestions that “the underlying policy seems broader, and the provision might well be construed to apply more broadly by analogy.” Id. (emphasis added). The conclusion of the authors is not, as the majority suggests, that La.R.S. 9:1426 is applicable to all situations of pension distribution, but that the approach suggested by the authors would fulfill an unstated legislative policy. In fact, the authors even suggest that La.R.S. 9:1426 “would seem to apply also in the case of a death of the other spouse before regular distributions are begun.” Id. (emphasis added).
In interpreting a statute, we must start with the mandate that “[wjhen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La.Civ.Code art. 9 (emphasis added). Louisiana Revised Statutes 9:1426 is clear and unambiguous and its strict application will lead to no absurd consequences. The usufruct provided to the surviving spouse is | triggered by a recurring payment that is already being made at the time of the other spouse’s death, and the usufruct over the amount being paid at that time is maintained as a legal usufruct. This language satisfies the basic policy behind the statute — that the retirement benefit being enjoyed by the surviving spouse at the time of the death of the other spouse is protected at the expense of the heirs. As I read the statute, the legislature obviously concluded that this specific language was sufficient to protect the surviving spouse. That is to say, if a couple is receiving a retirement benefit that is sufficient for their needs, one can assume that it will be sufficient for the survivor’s needs. To extend the usufruct to any increases, mandated or otherwise, or any lump sum withdrawals would defeat the ownership rights of the legal hems. The authors of the Treatise, and in following their logic, the majority in this matter, attempt to substitute their own policy conclusions for the clear letter of the law.
Given the clear language of the statute, I would not extend Mr. Lambert’s usufruct to any distributions over and above the monthly amount being paid at the time of Mrs. Lambert’s death. At the same time, I would address Ms. Boudreaux’s argument that the trial court erred in not holding that Mr. Lambert’s usufruct does not extend to any lump sum payments, and would rule in her favor for the reasons previously stated. The majority declines to address this issue, finding that “there is no present issue regarding lump sum withdrawals.” However, the trial court’s judgment is not limited to recurring payments; it attaches the usufruct to “all funds and proceeds” from the Main Stay IRA, which would include any lump-sum withdrawals from that account. If this court refuses to address that issue, then in the future the issue of lump-sum withdrawals would be res judicata. Thus, a decision from this court addressing the issue of lump-sum withdrawals is not an advisory opinion.
| ^Accordingly, I would reverse the trial court’s judgment in part and amend it to hold that the legal usufruct of La.R.S. 9:1426 attaches only to the recurring payments of $3,497.06 per month that were being made at the time of Kathryn Lambert’s death.